## ATLANTIC COAST LINE RAILROAD CO. *v.* POWELL.

1. The plaintiff's petition showing, that the car in which she was transported as a passenger over the defendant's railway was not heated, although the weather was extremely cold, and that, in consequence of the failure of the defendant's employees to heat the car, she contracted a severe illness; that she began her journey over the said railway at Albany in the county of Dougherty, and that she suffered as a result of the cold "in a few moments after the train left Albany, and while in said county of Dougherty," a suit to recover damages for injuries which resulted from the exposure to the cold was properly brought in that county; and it was not error for the court to overrule a demurrer to the petition, based upon the want of jurisdiction on the part of the city court of that county, although the hurtful effects resulting from the failure to heat the car may have been increased by a continuation of the journey through other counties.

2. The petition, showing further that the severe illness caused by the alleged wrongful and negligent failure of the defendant to have its cars properly heated, as set forth in the preceding headnote, resulted in serious physical injury to the plaintiff, and in partial paralysis, was not open to attack by general demurrer.

3. The petition failing to show whether the plaintiff was a passenger upon a freight or passenger train, the defendant was entitled, upon special demurrer to this portion of the petition, to have information in regard to that particular feature of the case. An allegation that "the attention of the agent of the company was called to the condition of the car, and requests made to have the same heated," was open to special demurrer on the ground that this allegation "fails to show what agent of the company had his attention called to the condition of the car, and whether said agent was connected with the operation of the train or had anything to do therewith." The defendant was entitled to more specific information than was contained in the allegation quoted; and the plaintiff

should have shown, in the event she could not be more specific, whether or not the agent referred to was in any way connected with the operation of the train.

4. The court did not err in overruling the special demurrer to that paragraph of the petition which set forth the means adopted by the plaintiff to mitigate her suffering, it being competent for her to allege and prove that she resorted to the expedients in her power to avoid or lessen the injuries resulting from the alleged negligence of the defendant.

5. Several months having elapsed between the time of the alleged injuries and the bringing of this suit, it was competent for the defendant's counsel to inquire of the plaintiff, while a witness on the stand, why she had "delayed so long in bringing the suit," and the court erred in sustaining an objection to that question on the ground that it was irrelevant.

6. It is error for the court, during the trial of a case and in the hearing of the jury, to express or intimate an opinion as to what has or has not been proved.

7. It is competent for either party to show the interest taken in the case by a material witness for the opposite party; and this may be done on cross-examination of the witness himself.

8. The instructions given by the court in the charge to the jury in regard to the application of the annuity and mortality tables were inaccurate and confusing, and tended to lead to erroneous results.

9. No other errors, requiring a reversal of the judgment overruling the motion for a new trial, than those already pointed out are shown to have been committed by the judge in his rulings or in his charge to the jury.

Submitted July 18, 1906.—Decided March 1, 1907.

Action for damages. Before Judge Crosland. City court of Albany. December 13, 1905.

Mattie Powell brought suit against the railroad company to recover damages for personal injuries alleged to have been sustained in consequence of its negligent failure to furnish heat in one of its coaches, on which she was being transported as a passenger over its railroad. The petitioner alleges, in part, "that petitioner went into the car set apart by said company for her transportation, and the car assigned her by the conductor in charge of said train, and a few minutes before the same left the city of Albany in said county of Dougherty, at or about the hour of one or two o'clock in the morning on the 17th day of December, 1903; that the weather was extremely and bitterly cold that night, and that when the train left Albany in said county of Dougherty there was no fire in said car, and that petitioner suffered severely, in a few moments after the train left Albany and while still in said county of Dougherty, from severe cold; that the attention of the agent of the company

was called to the condition of the car, and requests made to have the same heated; the agents of said company neglected, failed, and refused to do so, and made no effort whatever to heat the car, nor did they make any fire in the same until a short time before the said car reached Tifton, the destination of petitioner; that she remained aboard said car for the space of two or three hours, and during the whole time she was on the train she suffered the most intense mental and physical pain and anguish from the effects of the cold; . . that she contracted a severe sickness by reason of her exposure to said cold, and that the exposure on said night on said train, and the injury inflicted upon her by said defendants, have resulted in the partial paralysis of her lower limbs, and that since then she has constantly suffered pain in her ankles and feet." The plaintiff's freedom from negligence or fault, and the negligence of the company, are also alleged. The defendant filed a general and special demurrer, which were overruled. The jury returned a verdict in favor of the plaintiff. The defendant moved for a new trial, upon various grounds, alleging error in the admission of certain evidence and the exclusion of certain other evidence, and in certain portions of the court's charge to the jury. The motion was overruled, and the defendant excepted, assigning as error the overruling of the demurrers and the refusal of a new trial.

The instructions referred to in the 8th division of the opinion (which are complained of in the motion for a new trial) were as follows: "Now, upon the question of total destruction of earning capacity, look into the evidence and see what it is on that point; and if you believe she has suffered a total loss of earning capacity, look into the evidence and see what amount would represent fairly her average yearly earnings. Now in arriving at that amount, it is proper for you to consider the fact that a person in old age will not earn probably as much as if they were at a younger age. You should also take into consideration the fact that the plaintiff may lose some time in the future from her work; take all of those things which will come in the natural course of events, into consideration, and fix, I say, upon some sum which you think will represent a fair yearly or annual average earning of this plaintiff for the balance of her life; then you may use these mortality tables; but it is not incumbent, unless you want to, for you to use

them. Look into the age column and into the column next to that, and you will see the expectation of years; multiplying that amount which you have found, which will represent the average yearly earning capacity, by the number of expectancy of years, it will give you that amount which she would earn during the balance of her expected life. You may use the annuity tables, after having arrived, as I said before, at that average yearly amount. You may look at this annuity table, opposite in the age column, representing this plaintiff's age, and you will find the per cent. column—there are two—six per cent. column, and you will find the amount which represents the present value of a dollar for the expectancy of years which the plaintiff is expected to live. Having gotten that amount, you may multiply that by the average yearly amount, which will give you the approximate amount of damages for her entire expectancy; or you may arrive at it by the other calculation. You may take either one of these methods you please, or you may reject either, or arrive at it in your own way. The law does not make it compulsory to use these tables."

*Kay, Bennet & Conyers* and *Pope & Bennet,* for plaintiff in error. *Joseph H. Hall* and *Wallace & Smith,* contra.

BECK, J. (After stating the foregoing facts.)

1. The suit was properly brought in Dougherty county.

2. Counsel for the plaintiff in error insist that the general demurrer, on the ground that there was no cause of action set forth in the petition, should have been sustained "for the further reason that the declaration failed to describe a definite duty owed by the defendant to plaintiff, and a definite violation thereof." Upon the question thus raised, no authorities are cited in the brief of counsel for either party. In the limited time that we have had for the investigation of the authorities and the consideration of the law bearing upon the question, we have not found, in the works of text-writers or in the decisions of the different courts, either argument or ruling which tends to support the position taken by counsel for the plaintiff in error; while we have found a steady, if not voluminous, current of authorities against it. From the allegations in the petition it appears that at the time when petitioner became a ·passenger of the defendant company, "the weather was extremely and bitterly cold." Now if, under these conditions of extreme cold then prevailing, the failure to

supply heat would probably result in severe physical injury or possibly in death, the duty to heat the car by the employment of some of the means now at the command of railway companies would fall under the head of duties involving the safety of passengers; and in the discharge of such a duty the company would be bound to extraordinary diligence. Certainly it would require no research to discover, nor argument to show, that if passengers are put in jeopardy, not only relatively to their safety, but of their very lives, by being kept in a close car for hours, when the temperature of the air in the vehicle is below the freezing point, the company has been guilty of gross negligence in respect to them.

The duty of a railway company to supply its vehicles with sufficient warmth is usually classed with such duties as supplying the cars with "an adequate corps of servants" (Murray v. Lehigh Valley R. Co., 66 Conn. 512), "with suitable retiring places" (*Wood v. Ga. R. Co.,* 84 *Ga.* 363), "with seats, if a day coach;" and with other duties touching the convenience and comfort of the passengers. But where the cold is such as that if not mitigated by reasonable means, life itself would be jeopardized, the adoption of such means becomes a duty involving the safety of the passenger. See 2 Hutch. Carr. (3d ed.) §922. If, under the circumstances last supposed, the railway company is negligent in failing to supply the car in which passengers are being transported, by failing to heat the same, and the passenger suffers serious physical injuries in consequence thereof, the company is liable in damages to the injured party. "By the principles of the common law, a railway carrier of passengers is bound to use reasonable care and to make reasonable efforts, to the end of keeping its passenger coaches comfortably warm in cold weather, and *is* liable in damages to a passenger for any discomfort or illness it may produce by its failure of duty in this respect. . . The duty is clearer when women and little children are in the coaches, whose discomfort from the want of heat is made known to the conductor and the attending brakeman, and where heat is requested. If severe illness results to a passenger from the failure of a railway company to heat the car in which he is riding during cold weather, especially where there is a stove therein and ample opportunity to supply the needed heat, and the employees on the train are requested by the passenger to supply it, but fail to do so, the com-

pany is guilty of actionable negligence." 3 Thomp. Neg. 302. See also 6 Cyc. 621, and Hastings v. R. Co., 53 Fed. 224. In the case of Missouri, K. & T. Ry. Co. v. Byrd, 89 S. W. 991, the Civil Court of Appeals of Texas passed upon an assignment of error involving the following part of the trial court's charge to the jury: "Railway companies are not insurers of the safety and comfort of their passengers, but they are required to exercise that high degree of care that very cautious and prudent persons would have exercised under the same or similar circumstances, and a failure to do so is negligence as that term is hereinafter defined;" and, in passing upon the question, said: "Appellant claims that this imposed a more onerous duty on it than the law exacted. As stating a rule of law, the charge can not be questioned. Railway v. Byers (Tex. Civ. App.) 70 S. W. 558."

We are also unable to concede the correctness of the contention of the plaintiff in error, that the petitioner is not entitled, under the pleadings, to recover, because it appears that she voluntarily remained on the car when she could have withdrawn from it and avoided an obvious danger, by procuring other and warmer wraps; and that the declaration shows that her remaining on the car was the proximate cause of her injuries, as she "deliberately assumed the risk, if there was any." As we have seen, it was a duty resting upon the company to furnish heat in the car. The petition set out a cause of action against the defendant. The fact that the plaintiff alleged that she remained on the car while it was transporting her to her destination, although after she had become cold, would not authorize the assumption, as a matter of law, that she was wanting in ordinary care, or that her injury was the result of such want. No duty on her part was shown which she failed to discharge, no diligence which she failed to exercise. The petition was good as against a general demurrer. Want of ordinary care preventing recovery is ordinarily a matter of defense, and the plaintiff is not required to negative this defense.

3, 4. Except in the respect indicated in the third headnote, the petition was not open to demurrer upon any of the grounds set forth in the special demurrer. And, as ruled in the fourth headnote, the allegation in paragraph 4 of the petition, that "the pain in [petitioner's] feet and ankles from said cold was so intense

that she was compelled to sit on them, in order to endeavor in that way to restore circulation, and in a measure to relieve her suffering," was not demurrable on the ground that the same was irrelevant; as it tended to show that the plaintiff had sought to avoid the consequences of the defendant's alleged negligence, by adopting such means as were within her reach to mitigate and relieve her suffering. As we have seen, the plaintiff was not chargeable with negligence in remaining upon the car in order that she might complete her journey, but it was her duty to employ such means and avail herself of such resources as were reasonably within her reach while on the car, to avoid the hurtful effects of the prevailing cold. If she had had wraps with her, it would have been her duty to use them to produce warmth, which the defendant, according to her allegation, failed to supply; and if she had no wraps or extra clothing, and by sitting upon her feet she could alleviate the pain and suffering caused by the freezing weather, it was permissible for her to do so; and having done so, she was entitled to allege and prove it. The allegation to which we have just referred is germane to that part of the plaintiff's pleadings in which she alleges that "she could not prevent the consequences of defendant's negligence to herself."

5. It appears that a considerable time had elapsed, after the alleged injuries had been inflicted, before the plaintiff brought her suit to recover damages therefor; and it was one of the theories of the defendant that "the plaintiff had no idea that the defendant's alleged negligence had ever injured her, or had anything to do with her alleged injuries, until she was advised by her physician to bring suit;" and that "the claim that the defendant was liable to her in damages was a mere afterthought, coming to her long after the time of the infliction of the injuries which she complains that she had received;" and we think that the defendant's counsel had the right to cross-examine the plaintiff when she appeared as a witness in her own behalf, so as to elicit, either by her answers or by her manner of testifying, the real truth of the case in this particular. " 'The right of cross-examination, thorough and sifting,' which 'belongs to every party as 'to the witnesses against him,' should not be abridged, especially where the witness is the opposite party to the cause on trial, and has testified for the purpose of making out his own case." *Barnwell* v.

*Hannegan,* 105 *Ga.* 396.   While the error committed in sustaining the objection to the question just stated above might not constitute sufficient ground for reversing the judgment refusing a new trial, we have ruled upon this question in order that the error may not be repeated upon the next trial; the judgment of the court below being reversed upon other grounds.

6. While one of the plaintiff's witnesses, Dr. O'Daniel, was on the stand, the following question was propounded to him: "She had been exposed in a railroad car without any fire, on a very cold night, for three hours and twenty minutes, and at the time suffered intense pain, especially in her feet, and, when she got to the end of her journey, at the end of that time, was unable to walk without assistance, and had been able to walk without assistance up to that time; state whether or not, in your opinion, the cold she suffered on that car had anything to do with her injuries?" This question, when asked, was objected to by counsel for the defendant, on the ground that it was an improper question, "in that the cause of action is based upon the claim of the plaintiff that the exposure in the defendant's passenger car between Albany and Tifton solely produced the condition from which the plaintiff now claims that she is suffering, and that the case does not involve the question whether said cold aggravated a previously existing condition;" whereupon the court said, "That probably was the direct and proximate cause." It is complained that this remark by the court contained an expression of opinion upon a material fact in the case.   The exception to that remark is well founded.   It was an expression of an opinion, not only upon a material fact, but upon one of the facts of vital importance in the controversy between the parties.   Such an error requires the granting of a new trial.

7. The defendant proposed to prove that the witness, Dr. O'Daniel, had advised the plaintiff "to bring a damage suit against the railroad company," and that, "until so advised by him, the plaintiff had not the remotest idea of setting up any claim against the defendant company;" and the following question was propounded to Dr. O'Daniel: "Before you quit treating her, did you not advise her to bring a damage suit against the railroad?" The question was objected to by counsel for the plaintiff, on the ground that it was irrelevant; and the objection was sustained.   We think, however, that the question propounded was competent.   If a negative

answer thereto had been returned, no harm would have been done to either party; and if an affirmative answer had been given, although it would have had probably but slight probative value, it should have gone to the jury, for them to consider in passing upon the question of the witness's interest in the case.

8. The court's instruction in regard to the application of the annuity and mortality tables was not accurate or correct, and must have either misled or confused the jury, if they attempted to use the tables. *Railroad Co.* v. *Burney*, 98 *Ga.* 1.

9. The court does not appear to have committed reversible error in any of the rulings complained of, except those which have already been dealt with; nor were the portions of the charge excepted to erroneous upon any of the grounds taken, except in that portion dealing with the use and application of the annuity and mortality tables as ruled above.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*